IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RYAN SCHAPER, | |
| Plaintiff, | |
| v. | C.A. No. 23-692-GBW |
| LENSAR, INC., NICHOLAS T. CURTIS, THOMAS R. STAAB, II, WILLIAM J. LINK, THOMAS B. ELLIS, TODD B. HAMMER, RICHARD L. LINDSTROM, JOHN P. MCLAUGHLIN, ELIZABETH G. O'FARRELL, AIMEE S. WEISNER, AND GARY M. WINER, | |
| Defendants. | |

## MEMORANDUM ORDER

Pending before the Court is Plaintiff Ryan Schaper's ("Plaintiff" or "Schaper") Motion for Expedited Discovery. D.I. 14 (the "Motion"). Plaintiff seeks expedited discovery to prepare for its anticipated motion for a preliminary injunction. The Court has reviewed the Motion and associated briefing and declarations. D.I. 15; D.I. 16; D.I. 22; D.I 23; D.I. 26.

### I. BACKGROUND

Plaintiff Ryan Schaper beneficially owns 431,206 shares (approximately 3.9%) of Lensar Common Stock. D.I. 15 at 3. Lensar, Inc. ("Lensar" or "Company") is "a commercial-stage medical device company focused on designing, developing, and marketing advanced femtosecond laser systems for the treatment of cataracts and the management of pre-existing or surgically induced corneal astigmatism." *Id.* Lensar's new system is ALLY® Adaptive Cataract Treatment System, which allows surgeons to perform laser assisted cataract procedures. *Id.* at 4. Prior to FDA approval, Plaintiff asserts that Defendants Curtis and Staab made "recurring

1

statements [] that the Company intended to raise $10 million to $20 million of growth working capital to accelerate sales of the [ALLY®] system" and that "the Company projected the capital raise would allow the Company to reach approximately $200 million in revenue by around 2026-2027[.]" *Id.* According to Plaintiff, "[m]anagement and the Board knew that Plaintiff (and Plaintiff understands other shareholders) were ready, willing, and able to participate in any capital raise" to push sales of ALLY®. *Id.* at 4-5.

Following FDA approval in June 2022, Management informed Plaintiff that the Company "had secured a $10 million line of credit" to operate the growth plan and "had alternative options for financing growth, such as taking the Company private" to eliminate public company costs. *Id.* at 5. In December 2022 and January 2023, Defendant Staab informed Plaintiff that "the Board decided against using the $10 million line of credit in order to pursue a $20 million line of credit." *Id.* Then, on May 12, 2023, Lensar entered into a Purchase Agreement with North Run Capital, LP ("North Run"), one of its shareholders who held approximately 9.9% of Lensar common stock, for "an aggregate gross purchase price of $20 million" as well as shares of preferred stock and common stock. *Id.* at 6-7. Plaintiff assumed North Run "was given access to the Company's impressive but undisclosed budget numbers." *Id.* at 6.

Pursuant to the Purchase Agreement, North Run is limited on their ability to convert their shares preventing North Run from becoming a beneficial owner of more than 19.99% of Lensar's common stock. *Id.* at 6. But on June 8, 2023, the Company announced the Proposed Transaction with North Run, "pursuant to which North Run would be able to elect to have all of its Preferred Shares converted into Conversion Shares" and thus could obtain 57.0% of the voting power of the Company and 55.1% of beneficial ownership" and become the Company's controlling shareholder. *Id.* at 6-7.

2

Plaintiff takes issue with the sale being undervalued. *Id.* at 7 ("The per share implied value of the shares North Run would receive for its $20 million payment was only approximately $1.625 while the market price of the shares at that time was approximately $3.00 per share, a level that Management told Plaintiff and other Shareholders it believed to be significantly undervalued based on undisclosed (but almost certainly disclosed to North Run) impressive forecasts.")

The Company filed a definitive proxy statement (the "Proxy") with the Securities and Exchange Commission (the "SEC") regarding the Proposed Transaction. *Id.* at 7; D.I. 16, Ex. 1. Plaintiff argues that the Proxy fails to disclose "(i) shareholder interest in financing the Company's capital raise on more favorable, less dilutive terms; and (ii) the Company's internal budget projecting a significant anticipated increase in the Company's market share, revenue, and valuation." D.I. 15 at 7.

Defendants assert that Lensar did express its need for additional capital in launching ALLY® and that without it, may be "forced to delay, reduce, or discontinue [the] regulatory approval and commercialization efforts." D.I. 22 (Answering Br.) at 5-6 (citing D.I. 23, Ex. A ("Lensar's Annual Report on Form 10-K") at 14). Further, Lensar stated that capital would be difficult to get and "to the extent that we raise additional capital through future equity offers, the ownership interest of common stockholders will be diluted, which dilution may be significant" and "we cannot guarantee that we will be able to obtain any or sufficient additional funding or that such funding, if available, will be obtainable on terms satisfactory to us." *Id.* So while Plaintiff appears confident in Lensar's future to obtain capital through its alleged conversations with Defendant Staab and awareness that Lensar was engaged in conversations with another

beneficial owner of 9.65% of Lensar's common stock developing a debt financing agreement, the filings do not agree. *See* D.I. 15 at 5-6.

The only issue being presented at the August 1, 2023 meeting is whether stockholders will approve the removal of the "Beneficial Ownership Limitation" which prevents the conversion or exercise of the preferred stocks and warrants to common stocks, allowing North Run to become the beneficial owner of more than 19.99% of the common stock. D.I. 22 at 6-7. North Run separately would still have to elect to convert and exercise the maximum number of preferred stocks and warrants. *Id.* at 8-9.

## II.  POSTURE

Plaintiff Ryan Schaper filed the pending Motion for Expedited Discovery (D.I. 14) seeking:

1. minutes of the meetings of the Board, or any committees thereof, and all exhibits thereto, where the Purchase Agreement and/or the Proposed Transaction, or any alternatives thereto, were discussed;
2. minutes of the meetings of the Board, or any committees thereof, and all exhibits thereto, where the Company's post[]-FDA approval internal budget was discussed;
3. all presentations Management provided to the Board in connection to the Purchase Agreement and/or the Proposed Transaction, or any alternative strategic transactions;
4. all presentations Management provided to the Board in connection with post-FDA approval forecasts based on the internal budget;
5. all documents concerning or reflecting discussions between Management or the Board with Plaintiff and other shareholders related to financing options subsequent to the FDA approval of the ALLY System;
6. all documents containing discussions between Management or the Board with Madison Avenue Partners, LP ("MAP") related to the preliminary debt financing agreement; and
7. documents reflecting the internal budget used to project the increase in the Company's market share, revenue, and valuation, as discussed above.
8. a four-hour deposition of Defendant Nicholas T. Curtis, CEO of Lensar, Inc.
9. a two-hour deposition of Defendant Thomas R. Staab II, CFO of Lensar, Inc.
10. a two-hour deposition of Defendant William J. Link. Chairman of Lensar's Board of Directors; and
11. for the Court to enter a scheduling order for Plaintiff's anticipated preliminary injunction briefing and hearing.

D.I. 15 (Opening Br.) at 13-14; D.I. 14-1 (Proposed Order), ¶¶ 2-5.

With respect to the requested schedule, Plaintiff proposes that all requested documents be produced within five (5) days of this Court's order, and that three Defendants be made available for deposition "in the period starting eight (8) days from the date of this Order and concluding two (2) days before Plaintiff's opening preliminary injunction papers are due[,]" which Plaintiff asks the Court determine, and that the "[d]epositions may be scheduled on three days' notice." D.I. 14-1, ¶ 3.

Plaintiff filed its Complaint on June 26, 2023 (a day before filing the present Motion) alleging that Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act "by omitting material information concerning the Proposed Transaction from the Proxy." D.I. 15 at 9. Plaintiff asserts that the Proxy omits material information with regards to: (1) other significant shareholders' interest in financing Lensar's capital raise on more favorable, less dilutive terms; and (2) the internal budget projecting a significant increase in the Company's market share, revenue, and valuation." *Id.*

### III. LEGAL STANDARD

Neither the Federal Rules of Civil Procedure nor the Third Circuit Court of Appeals has established a standard governing motions to expedite discovery. *Park Lawn Corp. v. PlotBox, Inc.*, C.A. No. 20-1484-RGA, 2021 WL 3490020, at *1 (D. Del. Aug. 9, 2021) (citing *Reybold Grp., Inc. v. Does 1–20*, 323 F.R.D. 205, 208 (D. Del. 2017)). "Courts, however, have broad discretion to manage the discovery process, and can expedite or otherwise alter the timing and sequence of discovery." *Vision Films, Inc. v. John Does 1-24*, 2013 WL 1163988, at *2 (D. Del. Mar. 20, 2013).

Courts in the Third Circuit may employ one of two tests for determining the propriety of an expedited discovery request. *Id.* The first standard adopts the framework outlined in *Notaro*

*v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982). The analysis is "very similar to a preliminary injunction analysis and looks more closely at the merits of the request." *Murguly v. Locke*, 2020 WL 2401354, at *1 (D.N.J. May 11, 2020). Under the *Notaro* standard, the moving party must demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Vision Films*, 2013 WL 1163988, at *2 (quoting *Notaro*, 95 F.R.D. at 405).

The second standard, called the "reasonableness" test, requires a showing of good cause and is "considerably more liberal than the *Notaro* standard." *Park Lawn*, 2021 WL 3490020, at *2 (quoting *Better Packages, Inc. v. Zheng*, 2006 WL 1373055, at *3 (D.N.J. May 17, 2006)). Under the "reasonableness" test, "the court must weigh the need for discovery at an early juncture in the litigation against the breadth of the discovery requests and the prejudice to the responding party, by considering such factors as (1) the timing and context of the discovery requests, including whether a preliminary injunction hearing has been scheduled; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent." *Kone Corp. v. ThyssenKrupp USA, Inc.*, 2011 WL 4478477, at *4 (D. Del. Sept. 26, 2011).

As this Court has previously noted, both tests come with criticisms:

> When a party seeks expedited discovery to support an anticipated motion for preliminary injunction, some district courts have favored the reasonableness test over the *Notaro* test on the basis that the *Notaro* test can be "circular and ineffective." *Id.* at *6. "Under a *Notaro*-style analysis, a movant would have to paradoxically demonstrate a 'probability of success' on the merits of infringement to justify discovery—discovery that is presumably needed in order to help make a showing of the same type of 'likelihood of success' at a later preliminary injunction hearing." *Id.* This criticism has some validity. At the same time, however, it does not seem wise to entirely abandon the *Notaro* test, because the

6

reasonableness test does not explicitly require a court to consider either the merits of a plaintiff's claims or the threat of irreparable injury. Thus, what prevents a plaintiff with entirely frivolous claims and only a remote possibility of irreparable injury from using a motion to expedite discovery to engage in a fishing expedition?

*Park Lawn*, 2021 WL 3490020, at *2.

Defendants argue that expedited discovery is improper under the Private Securities Legislation Reform Act ("PSLRA"), which states that states that "[i]n any private action arising under this [federal securities] chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that *particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party*." 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added).[1] "It was Congress's intent that the PSLRA's automatic stay provision would apply in all cases except those involving 'exceptional circumstance[s.]'" *Desmarais v. First Niagra Fin. Grp., Inc.*, C.A. No. 15-1226-LPS-CJB, 2016

---

[1] There is no pending motion to dismiss in this case—Plaintiff filed the present Motion a day after filing the Complaint. *See* D.I. 1; D.I. 14. Defendants fail to explain to this Court why the PLSRA should apply in this case despite the language of the statute appearing to require a pending Motion to Dismiss. However, there is case law to suggest that a motion to dismiss is not a strict requirement. *See In re Pattern Energy Grp. Inc. Sec. Litig.*, C.A. No. 20-275-MN-JLH, 2021 WL 312752, at *3 (D. Del. Jan. 28, 2021) ("The idea that Plaintiffs might use discovery to bolster the allegations in their complaint—*whether in advance of a motion to dismiss* or to amend in the event that a motion to dismiss is granted—plainly conflicts with the directive set forth in the PSLRA." (emphasis added)); *In re Carnegie Int'l Corp. Sec. Litig.*, 107 F. Supp. 2d 676, 683 (D. Md. 2000) ("More well reasoned decisions have held the automatic stay provision of the Act is triggered by the mere indication by defense of its intention to file a motion to dismiss" (citing cases)). Defendants have not yet expressly indicated that they intend to file a Motion to Dismiss, but this Court agrees that "[t]he intent of the PSLRA is served by a stay of discovery until the defendants have the *opportunity* to test the sufficiency of the complaint under the orderly procedures provided by the rules and court orders. Any other interpretation would encourage unseemly gamesmanship, i.e., a race to serve subpoenas for discovery before a defendant had the opportunity to test the sufficiency of the complaint." *In re Carnegie*, 107 F.Supp.2d at 683 (emphasis in original). Furthermore, Plaintiff does not argue that the PSLRA automatic stay does not apply here. D.I. 26 (Reply Br.) at 1 n.1 (citing case law where cases granted expedited discovery in the PSLRA context).

WL 768257, at *2 (D. Del. Feb. 26, 2016). (quoting S.Rep. No. 104–98, at 14 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 693). *See also SG Cowen Sec. Corp. v. U.S. Dist. Court for N. Dist. of Cal.*, 189 F.3d 909, 911–12 (9th Cir.1999); *Dipple v. Odell*, 870 F.Supp.2d 386, 391 (E.D. Pa. 2012) (requiring a showing of "extraordinary circumstances" to warrant the lifting the automatic stay); *Winer Family Trust v. Queen*, C.A. No. 03-4318, 2004 WL 350181, at *1–2 (E.D. Pa. Feb. 6, 2004) (same).

Plaintiff, in an attempt to assist the Court, argues that the multiple standards "Defendants cite to" actually "come down to two questions: (1) Will Plaintiff likely succeed on the merits? And (2) Will Plaintiff suffer undue prejudice or irreparable harm?" D.I. 26 (Reply Br.) at 1.

## IV. DISCUSSION

As an initial matter, this Court will not analyze Plaintiff's request strictly under the *Notaro* factors, as Plaintiff seeks expedited discovery in anticipation for a preliminary injunction. *Kone*, 2011 WL 4478477, at *6 ("Under a *Notaro*-style analysis, a movant would have to paradoxically demonstrate a "probability of success" on the merits of infringement to justify discovery—discovery that is presumably needed in order to help make a showing of the same type of "likelihood of success" at a later preliminary injunction hearing"). *See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000) (applying a reasonableness standard and noting that when "a plaintiff seeks expedited discovery in order to prepare for a preliminary injunction hearing, it does not make sense to use preliminary injunction analysis factors to determine the propriety" of the request); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002) (noting that it makes "little sense" to employ the *Notaro* analysis when the request is for the purpose of preparing for a preliminary injunction hearing).

However, the Court notes, as it has in the past, that the "reasonableness" test runs the risk of permitting "frivolous claims" wherein a plaintiff need only show a remote possibility of injury in order to pursue expedited discovery. *Park Lawn*, 2021 WL 3490020, at *5. But in this case, because it is a federal securities matter, the Court will evaluate whether Plaintiff meets the additional requirements of the PLSRA, which require this Court to evaluate Plaintiff's request for particularity and avoidance of prejudice.

Therefore, this Court will review whether the discovery sought is (1) particularized, and (2) would prevent undue prejudice to the Plaintiff under the PSLRA.[2] *See* 15 U.S.C. § 78u-4(b)(3)(B). First, as noted above, ***supra § II***, Plaintiff seeks various documents including minutes of meetings, presentations, financial documents concerning the Purchase Agreement with North Run and alternatives thereto, as well as depositions of three Defendants for a total of eight (8) hours. Plaintiff appears to have attempted to tailor his request to the information he alleges is not in the Proxy, but discovery sought remains somewhat broad. For example, Plaintiff seeks "documents reflecting the internal budget used to project the increase in the Company's market share, revenue, and valuation," and "all presentations Management provided to the Board in connection to the Purchase Agreement and/or the Proposed Transaction, or any alternative strategic transactions." D.I. 15 at 13-14. Additionally, Defendants point out that Plaintiff's "requests do not merely seek readily accessible Board materials, but instead require a burdensome search and collection process for 'documents containing discussions' between management, the Board, stockholders, and [MAP]." D.I. 22 at 14. However, it is not uncommon for Courts to narrow discovery where they deem limited discovery appropriate but find that the

---

[2] Plaintiff does not argue that the discovery is sought to preserve evidence.

9

movant has overreached with its requests in the first instance. *See Kone*, 2011 WL 4478477, at *8. Therefore, this Court will table the issue of particularization and move to undue prejudice.

"Courts interpreting the PSLRA have held that 'undue prejudice' means 'improper or unfair treatment amounting to something less than irreparable harm.'" *Desmarais*, 2016 WL 768257, at *2 (quoting *Lusk v. Life Time Fitness, Inc.*, C.A. No. 15-1911, 2015 WL 2374205, at *2 (D. Minn. May 18, 2015)). Plaintiff asserts that "[w]ithout the complete disclosure of this impressive internal budget and the discussions and analysis of the financial forecast stemming therefrom, Plaintiff and Lensar shareholders will be unable to assess the merits of the Proposed Transaction compared to alternative options for raising capital." D.I. 15 at 12. Thus, Plaintiff asserts that the harm is the result of an "uninformed vote on the Proposed Transaction." *Id.*

In some cases, courts have held that a lack of information prior to a looming shareholder vote amounts to undue prejudice such that lifting the PSLRA's stay of discovery is warranted." *Lusk*, 2015 WL 2374205, at *3 (citing *Malon v. Franklin Fin. Corp.*, C.A. No. 14-671, 2014 WL 5795730, at *2-*3 (E.D. Va. Nov. 6, 2014) ("Given the imminent shareholder vote on the Proposed Transaction and Plaintiff's anticipated motion for a preliminary injunction, the Court finds that Plaintiff will suffer not only undue prejudice, but irreparable harm if the PSLRA stay is not lifted."); *Nichting v. DPL Inc.*, C.A. No. 11–141, 2011 WL 2892945, at *3-*4 (S.D. Ohio July 15, 2011)). However, "[s]everal courts have rejected the argument that the risk of an uninformed stockholder vote on a proposed transaction by itself creates undue prejudice." *City of Birmingham Ret. & Relief Sys. v. Armstrong*, C.A. No. 16-17-RGA, 2016 WL 880503, at *2 (D. Del. Mar. 1, 2016) (citing cases). The question for this Court becomes whether the Plaintiff will be left without redress. *Desmarais*, 2016 WL 768257, at *2.

10

In *Desmarais*, a plaintiff filed suit alleging defendants "authorized a release of a preliminary proxy statement" that "contained incomplete and material misleading information regarding the process that led to a Merger Agreement." *Id.* at *1. Plaintiff there sought expedited discovery in anticipation of a motion plaintiff intended to file to "preliminary enjoin that vote." *Id.* The discovery sought would require defendants to "produce certain documents that ha[d] already been provided in discovery to various First Niagra stockholders in six New York State court actions." *Id.*

The court found that Plaintiff failed to show undue prejudice because (1) "[w]ere Plaintiff's request for expedited discovery denied, he would still have the ability to file a preliminary injunction motion in the instant case" seeking to enjoin the vote, and (2) Plaintiff and shareholders would not be left without redress to seek relief, as Plaintiff "has sought various forms of relief in this action other than injunctive relief," such as rescinding or setting aside the Proposed Transaction and/or damages. 2016 WL 768257, at *2. Similarly, in this action, Plaintiff is not prohibited from filing his preliminary injunction without expedited discovery and may rely on the Complaint. Plaintiff also has sought additional forms of relief beyond injunctive relief, such as "[in] the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside" or "awarding rescissory damages to Plaintiff." D.I. 1 at 24 (Prayer for Relief). Plaintiff also asserts injury because the Purchase Agreement with North Run is "under-market" and "highly-dilutive." D.I. 15 at 10; D.I. 26 at 2-3. Defendants respond that "Plaintiff has not explained [] why the fact that he will own a lower percentage of LENSAR will be economically harmful to him—indeed, the value of his shares has increased since the announcement of the Transaction." D.I. 22 at 4, 9 (following execution of the Purchase

Agreement, stock price doubled).[3] Accordingly, absent more, this Court will not permit a lift on a stay imposed by the PLSRA when the potential harm is a lack of information prior to a looming shareholder vote. *Dipple*, 870 F.Supp.2d at 393 ("Congress enacted the PSLRA automatic-stay provision to protect defendants from financially burdensome fishing expeditions until the sufficiency of the primary complaint ha[d] been tested [by a motion to dismiss]." (citation and quotations omitted)).

The Court will next turn to the "reasonableness" test for additional analysis. Under the reasonableness analysis, Plaintiff must show that the need for early discovery is warranted, and the Court considers such factors as: (1) the timing and context of the discovery requests, including whether a preliminary injunction hearing has been scheduled; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent. *Park Lawn Corp.*, 2021 WL 3490020, at *2 (D. Del. Aug. 9, 2021).

In the present case, a preliminary injunction has not been filed and no hearing has been scheduled. Under Plaintiff's request, Defendants would be required to respond in five (5) days to six requests for documents that seek budgetary and financial documents and all forms of communication between the Board, management, and third parties. Defendants Curtis, Staab and Link also would be required to produce themselves for depositions thereafter. Under the circumstances of this case, the Court is not persuaded that expedited discovery is warranted.

---

[3] In response to Defendant's point that stock price went up, Plaintiff argues that we cannot know "how the market would have reacted to a different $20 million deal that was not dilutive and now below market." D.I. 26 at 4 n.4. The Court cannot find irreparable or even less than irreparable harm where Plaintiff speculates that he could have been in a better financial position if the Company had engaged in a different, unspecified deal. In other words, it is possible that Plaintiff may be more profitable as a result of the Purchase Agreement and Proposed Transaction.

## V.      CONCLUSION

For the reasons above, it is HEREBY ORDERED that Plaintiff's Motion for Expedited Discovery (D.I. 14) is DENIED.

July 13, 2023

The Honorable Gregory B. Williams
United States District Judge
