# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RYAN SCHAPER and CHRISTOPHER P. BOLSTER, Individually and on Behalf of All Others Similarly Situated,<br>　　　　　Plaintiffs,<br><br>　　v.<br><br>LENSAR, INC., NICHOLAS T. CURTIS, THOMAS R. STAAB, II, WILLIAM J. LINK, THOMAS B. ELLIS, TODD B. HAMMER, RICHARD L. LINDSTROM, JOHN P. MCLAUGHLIN, ELIZABETH G. O'FARRELL, AIMEE S. WEISNER, and GARY M. WINER<br>　　　　　Defendants. | Civil Action No. 23-cv-00692-GBW |

## OPENING BRIEF OF PLAINTIFFS
## RYAN SCHAPER AND CHRISTOPHER P. BOLSTER
## IN SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD
## PLAINTIFFS AND APPROVAL OF SELECTION OF LEAD COUNSEL

OF COUNSEL:

Carl L. Stine
Chet B. Waldman
Justyn J. Millamena
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
(212) 759-4600

COOCH & TAYLOR, P.A.
Carmella P. Keener (DE #2810)
The Brandywine Building
1000 N. West Street, Suite 1500
Wilmington, DE 19899
(302) 984-3816
ckeener@coochtaylor.com

*Counsel for Plaintiffs and the Proposed Class*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

PROCEDURAL HISTORY ......................................................................................................6

ARGUMENT .............................................................................................................................7

    I.   SCHAPER AND BOLSTER ARE THE MOST ADEQUATE
        PLAINTIFFS AND SHOULD BE APPOINTED LEAD PLAINTIFFS ......7

        A.  The Lead Plaintiff Framework Under the PSLRA .................................7

        B.  Plaintiffs Have Satisfied the PSLRA's Procedural Requirements ..........8

        C.  Plaintiffs Have the "Largest Financial Interest" in the
            Relief Sought by the Class .....................................................................9

        D.  Plaintiffs Satisfy the Typicality and Adequacy Requirements
            of Rule 23 ..............................................................................................10

            1.  Plaintiffs are Typical of the Class ....................................................10

            2.  Plaintiffs are Adequate Representatives of the Class .......................11

    II.  PLAINTIFFS' SELECTION OF COUNSEL SHOULD
        BE APPROVED ...............................................................................................13

CONCLUSION .......................................................................................................................16

# **TABLE OF AUTHORITIES**

**Cases**

*Bardaji v. Match Grp., Inc.*,
 No. 23-245 (MN), 2023 U.S. Dist. LEXIS 90616 (D. Del. May 24, 2023) ......... 10

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001) ..................................................................... 9, 13

*Soto v. Hensler*,
 235 F. Supp. 3d 607 (D. Del. 2017) ............................................................ 9, 11

*Wayne Cty. Emples. Ret. Sys. v. Mavenir, Inc.*,
 Civil Action No. 18-1229-CFC-SRF, 2019 U.S. Dist. LEXIS 128530
 (D. Del. Aug. 1, 2019) ............................................................................. 10, 13

*Wigginton v. Advance Auto Parts, Inc.*,
 No. 18-212 (MN), 2018 U.S. Dist. LEXIS 187661 (D. Del. Nov. 2, 2018) ......... 9

**Statutes**

15 U.S.C. § 78n(a) ............................................................................................. 2

15 U.S.C. § 78u-4(a)(3) .................................................................................. 1, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii) ........................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ................................................................. 9

15 U.S.C. §78j(b) ............................................................................................... 2

15 U.S.C. §78t(a) ............................................................................................... 2

17 C.F.R. § 140.14a-9 ....................................................................................... 2

Section 14(a) of the Securities Exchange Act of 1934 ..................................... 2

Section 20(a) of the Securities Exchange Act of 1934 ..................................... 2

**Other Authorities**

Herbert B. Newberg & Alba Conte, Newberg on Class Actions §22.24 (4th ed.
 2002) ............................................................................................................. 11

## PRELIMINARY STATEMENT

Plaintiffs Ryan Schaper and Christopher P. Bolster (together, "Plaintiffs") respectfully seek appointment as Lead Plaintiffs in this action (the "Action"). Plaintiffs meet all the requirements of the Private Securities Litigation Reform Act ("PSLRA") for appointment as Lead Plaintiffs. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Plaintiffs filed the Amended Class Action Complaint (the "Complaint") and timely filed their motion. Plaintiffs believe they likely have the largest financial interest in the relief sought by the Class (defined below) of investors in Lensar, Inc. ("Lensar" or the "Company") common stock. Plaintiff Schaper beneficially owned 432,449 of Lensar common stock at the time the Amended Complaint was filed, 431,206 of which he held as of June 20, 2023, the date the Proxy (defined below) was filed. Plaintiff Bolster held 76,554 shares of Lensar common stock as of June 20, 2023, and continuously owned or controlled these shares throughout all times relevant hereto. Plaintiffs also satisfy the adequacy and typicality requirements of Rule 23 as members of the Class.

Plaintiffs further request that the Court approve their selection of Wolf Popper LLP to serve as Lead Counsel for the Class and Cooch and Taylor, P.A. ("Cooch and Taylor") as Delaware Counsel. Wolf Popper is a nationally recognized law firm with a consistent record in securities litigation of achieving substantial recoveries for the benefit of injured investor classes, and has the expertise and resources

necessary to provide high quality legal representation to the Class. Cooch and Taylor has significant experience in complex and class action litigation.

## FACTUAL BACKGROUND

Defendants (Lensar and certain of its executive officers and directors) are charged in the operative Complaint with making materially false and misleading statements in connection with a proposed transaction announced on May 18, 2023 (the "Proposed Transaction" or the "North Run Control Proposal"), in violation of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 140.14a-9 ("Rule 14a-9").

Lensar is a commercial-stage medical device company that focuses on designing, developing, and marketing advanced femtosecond laser systems for the treatment of cataracts and the management of pre-existing or surgically induced corneal astigmatism. ¶ 25.[1] Lensar common stock trades on the NASDAQ under the symbol "LNSR." ¶ 11.

On June 13, 2022, Lensar announced that it had received FDA 510(k) clearance for its ALLY® Adaptive Cataract Treatment System (the "ALLY System"), which combines all the features from its older laser system with a dual-

---

[1] References to "¶ _" refer to the paragraphs of the verified amended class action complaint filed in this action ("Complaint," ECF No. 41).

2

pulse laser, integrated in a small, compact cataract treatment system that is designed to allow surgeons to perform a femtosecond laser assisted cataract procedure in a single operating room. ¶ 27.

Since at least 2021, prior to FDA approval of the ALLY System, Defendant Curtis and Defendant Staab (collectively "Management") had several conversations with Plaintiff Schaper and other shareholders expressing the Company's intention to raise $10 million to $20 million of growth working capital to accelerate sales of the Ally System. ¶ 32. Instead of approaching existing shareholders or obtaining the necessary capital with a line of credit or some other debt or equity issuance available to all shareholders, the Company chose to do an unnecessary, highly dilutive, and far-below-market equity transaction giving one of its shareholders control of Lensar. ¶ 46.

In this connection, on May 15, 2023, Lensar announced that it had entered into a Securities Purchase Agreement (the "Purchase Agreement") with NR-GRI Partners, LP (the "Buyer"), a Delaware limited partnership and an affiliate of North Run Capital, LP ("North Run"), on May 12, 2023. ¶ 47. Shareholder approval for this transaction was not sought. ¶ 47.

Pursuant to the terms of the Purchase Agreement, the Company agreed to issue and sell to the North Run affiliate for an aggregate gross purchase price of $20 million, (i) an aggregate of 20,000 shares of Series A Convertible Preferred Stock

3

("the Preferred Shares"), a newly established series of preferred stock, which have a stated value of $1,000 per share and are initially convertible into 7,940,446 shares (the "Conversion Shares") of common stock, and (ii) warrants (the "Warrants") to purchase an aggregate of 4,367,246 shares of common stock (the "Warrant Shares"). ¶ 48.

Pursuant to the Purchase Agreement, a Beneficial Ownership Block limited North Run's ability to convert its Preferred Shares to Conversion Shares and to exercise its Warrants in scenarios where the conversion and exercise resulted in North Run becoming a beneficial owner of more than 19.99% of Lensar's common stock. ¶¶ 50-51.

On May 18, 2023, the Company announced in a current report on Form 8-K that Lensar would hold a special meeting of its stockholders to vote on the removal of the Beneficial Ownership Block (*i.e.*, the North Run Control Proposal) no later than August 16, 2023. ¶ 58. The transaction was subject to obtaining a majority of votes cast. ¶ 60.

On June 8, 2023, the Company filed a preliminary proxy statement on a Schedule 14A with the SEC announcing that the special meeting would be held August 1, 2023. On June 20, 2023, the Company filed a definitive proxy statement on a Schedule 14A (i.e., the "Proxy") with the SEC in connection with the North Run Control Proposal. ¶ 58. In the Proxy, the Lensar board of directors (the

"Board") recommended that stockholders vote in favor of the North Run Control Proposal without providing any reason for its recommendation.

On July 17, 2023, Plaintiff Schaper filed an exempt solicitation with the SEC urging shareholders to vote against the North Run Control Proposal. ¶ 64.

The Merger was approved on August 1, 2023 by a majority of the votes cast by Lensar shareholders with 5,233,795 votes cast in favor of the transaction, representing 62.33% of the votes cast, but only 46.73% of the shares outstanding. Both Plaintiff Schaper and Plaintiff Bolster voted "AGAINST" the Proposal. ¶¶ 68-69.

The Complaint alleges that the Proxy was materially false and misleading for containing materially incomplete information concerning, among other things, (i) the basis, if any, for the Board's recommendation on the vote, (ii) the Company's impressive but undisclosed internal budget numbers, (iii) the rejected alternative financing options for a capital raise, (iv) background on North Run and its co-managing partners elected to the Lensar Board, (v) the potential costs to the Company of a renewal of a vote on the Proposal in the future if the Proposal was initially voted down, and (vi) potential management and Board conflicts of interest. ¶ 80.

## PROCEDURAL HISTORY

On June 26, 2023, prior to the vote on the North Run Control Proposal, Plaintiff Schaper filed a complaint alleging that Defendants violated Sections 14(a) and 20(a) of the Exchange Act. ¶ 61.

On June 27, 2023, Plaintiff Schaper filed a motion for expedited discovery seeking more information, and permitting sufficient time, for the Court's consideration of his planned motion for preliminary injunction to enjoin the August 1, 2023 shareholder vote. ¶ 62. The Court denied Plaintiff's motion on July 13, 2023, stating that Plaintiff Schaper had an adequate remedy at law for post-closing damages if the North Run Control Proposal was approved by Lensar's stockholders. ¶ 63; ECF No. 31.

On July 19, 2023, Plaintiff Schaper filed his motion for preliminary injunction seeking to enjoin the August 1, 2023 shareholder vote on the Proposal. The motion was never considered by the Court. ¶ 67.

On August 1, 2023, shareholders of Lensar approved the Proposal. ¶ 68.

On August 14, 2023, the Complaint was filed alleging violations of the Exchange Act (as stated above), on behalf of Plaintiffs and the other public shareholders of Lensar. Excluded from the Class are North Run, Defendants herein, and any person, firm, trust, corporation, or other entity related to or affiliated with North Run and any of the Defendants. Also on August 18, 2023, pursuant to the

PSLRA, 15 U.S.C. § 78u-4(a)(3), Plaintiffs through their counsel, caused to be published via ACCESSWIRE, a national wire service, a press release announcing the pendency of the Action, the claims asserted in the Action, the purported Class alleged in the action, and that any member of the purported Class may move the Court to serve as lead plaintiff in the Action no later than October 17, 2023, the first business day 60 days after the date the Notice was published (the "PSLRA Notice").[2]

## ARGUMENT

### I.  SCHAPER AND BOLSTER ARE THE MOST ADEQUATE PLAINTIFFS AND SHOULD BE APPOINTED LEAD PLAINTIFFS

#### A.  The Lead Plaintiff Framework Under the PSLRA

The PSLRA instructs that in a securities class action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter referred to as the 'most adequate plaintiff')."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the "person or group of persons that has either filed the complaint or made a motion [for appointment as lead plaintiff]; in the determination of the court, has the largest financial interest in the relief sought by the class; and … otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15

---

[2] The PSLRA Notice is attached as Exhibit A to the Declaration of Chet B. Waldman dated October 16, 2023 (the "Waldman Decl.").

7

U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).  The PSLRA allows that the presumption may only be rebutted "upon proof" that the most adequate plaintiff "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

Satisfying each requirement of the PSLRA, Plaintiffs respectfully submit that they are the presumptive "most adequate plaintiff."  Plaintiffs have complied with the PSLRA procedural requirements, anticipate that they will hold the largest financial interest of any movant, and satisfy Rule 23's typicality and adequacy requirements.

### B. Plaintiffs Have Satisfied the PSLRA's Procedural Requirements

Plaintiffs filed the Complaint and attached sworn certifications attesting to their willingness to serve as Lead Plaintiff for the Class and to provide testimony at deposition and trial, if necessary.  *See* Waldman Decl., Ex. B.  Plaintiffs, through their counsel, issued the PSLRA Notice.  Waldman Decl., Ex. A. Plaintiffs also timely filed a motion seeking appointment as Lead Plaintiffs and approval of their selection of counsel.  Plaintiffs therefore satisfy the first criterion of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

8

## C. **Plaintiffs Likely Have the "Largest Financial Interest" in the Relief Sought by the Class**

The PSLRA offers no statutory guidance for determining which plaintiff has the largest financial interest. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). Courts in this Circuit, "consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *Wigginton v. Advance Auto Parts, Inc.*, No. 18-212 (MN), 2018 U.S. Dist. LEXIS 187661, at *2 (D. Del. Nov. 2, 2018) (quoting *Cendant* 264 F.3d at 262) (internal quotation marks omitted). Courts in this Circuit have afforded the third factor the most weight." *Soto v. Hensler*, 235 F. Supp. 3d 607, 615 (D. Del. 2017).

As of the time of the filing of their motion, Plaintiffs believe that they likely have the largest financial interest of any Class member who might seek appointment as lead plaintiff in this Action. Plaintiff Schaper beneficially owned 432,449 shares of Lensar common stock as of the date the Complaint was filed and 431,206 Lensar shares as of June 20, 2023, the date of the Proxy. Plaintiff Bolster beneficially owned 76,554 shares of Lensar common stock as of the date of the Complaint and the Proxy. Collectively, their ownership share represents 4.53% of the total outstanding Lensar shares prior to the Purchase Agreement. Accordingly, Plaintiffs

9

believe they likely satisfy the second criterion of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### D. Plaintiffs Satisfy the Typicality and Adequacy Requirements of Rule 23

"[T]he Court must determine whether the movant with the largest financial interest . . . satisfies the typicality and adequacy requirements of Rule 23 such that it is entitled to the presumption of most adequate plaintiff." *Wigginton*, 2018 U.S. Dist. LEXIS 187661, at *2. "At this stage, the Court's inquiry 'need not be extensive' and should only consider whether the movant has stated a prima facie case of typicality and adequacy under Rule 23." *Bardaji v. Match Grp., Inc.*, No. 23-245 (MN), 2023 U.S. Dist. LEXIS 90616, at *4 (D. Del. May 24, 2023) (citation and quotation omitted).

#### 1. Plaintiffs Are Typical of the Class

"As to typicality under Rule 23, the Court must determine whether [the movant's] circumstances or legal theories are markedly different than those of the proposed class." *Wigginton*, 2018 U.S. Dist. LEXIS 187661, at *10 (citation and quotation omitted). Plaintiffs' claims are typical of those of the purported Class. Both Plaintiffs and the Class "allege that defendants violated the Exchange Act by failing to disclose material facts . . . and providing misleading disclosures in the proxy materials." *Wayne Cty. Emples. Ret. Sys. v. Mavenir, Inc.*, Civ. Action No. 18-1229-CFC-SRF, 2019 U.S. Dist. LEXIS 128530, at *8 (D. Del. Aug. 1, 2019).

10

Plaintiffs held Lensar common stock and had the right to vote on the North Run Control Proposal pursuant to the Proxy dated June 20, 2023, and were damaged thereby.  There is a well-defined community of interest in the questions of law and fact involved in Section 14(a) claims, of which Plaintiffs are a part.  Because the claims asserted by Plaintiffs are premised on the same legal and remedial theories and are based on the same types of misrepresentations and omissions in the Proxy as the other Section 14(a) Class members, typicality is satisfied.  Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 22.24, at 107-08 (4th ed. 2002) ("The majority of class action decisions support the view that when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met.").

### 2. Plaintiffs Are Adequate Representatives of the Class

"As to adequacy under Rule 23, the Court must determine whether [the movant] possesses the ability and incentive to represent the class vigorously, whether it has retained adequate counsel to represent the entire class, and whether there are conflicts between [the movant's] claims and the claims of the proposed class." *Wigginton*, 2018 U.S. Dist. LEXIS 187661, at *11 (citation and quotation omitted)

Both Plaintiff Schaper and Plaintiff Bolster have the ability to represent the Class given their substantial business and investing experience.  *See Soto*, 235 F.

11

Supp. 3d at 616 (D. Del. 2017); *see also* Waldman Decl., Exs. C, D.  Plaintiffs' claims are not antagonistic or in conflict with those of the Class.  Moreover, Plaintiff Schaper filed the original complaint, and filed a motion seeking to enjoin the August 1, 2023 shareholder vote on the North Run Control Proposal until such time where Defendants disclosed the Proxy's material omissions and remedy its misleading statements so that shareholders had the ability to cast an informed vote, which Defendants declined to do.  His vigorous pursuit of those claims shows his zealousness, which will extend to the claims of the whole Class.

Plaintiffs are not subject to any unique defenses.  Further, Plaintiffs' substantial financial interest in the litigation means they have sufficient incentive in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class members, whose interests align directly with their own.  Plaintiffs have each submitted a certification attesting to their willingness to serve as a Lead Plaintiff for the Class and to provide testimony at deposition and trial, if necessary.  *See* Waldman Decl., Exs. 2, 4 of Ex. B.  As described below, Plaintiffs have retained Wolf Popper to act as counsel, and Wolf Popper is experienced in securities litigation.

Because Plaintiffs' claims are typical of those of the Class and they will adequately represent the Class, Plaintiffs satisfy the third criterion of the PSLRA's

12

"presumptively most adequate plaintiff" analysis. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

In sum, Plaintiffs are likely the presumptively most adequate plaintiffs and should be appointed Lead Plaintiffs. Plaintiffs filed the Complaint, issued the PSLRA Notice, timely filed a motion seeking appointment as Lead Plaintiff, likely have the largest financial interest in the relief sought by the Class, and satisfy the requirements of Rule 23(a).

## II. PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *Wayne Cty. Emples. Ret. Sys.*, 2019 U.S. Dist. LEXIS 128530, at *12 (quoting *Cendant*, 264 F.3d at 276 (internal quotations omitted). "The Court's inquiry is limited to whether the lead plaintiff's selection and agreement with counsel are reasonable on their own terms." *Id*. (citation and quotation omitted). "Relevant factors to consider include: (1) the lead plaintiff's legal experience and sophistication; (2) how the lead plaintiff chose potential law firms to consider; (3) how the lead plaintiff selected its proposed counsel; (4) the qualifications and experience of lead plaintiff's proposed counsel; and (5) evidence relating to whether

13

the retainer agreement arose out of serious negotiations between the lead plaintiff and its proposed counsel." *Wigginton*, 2018 U.S. Dist. LEXIS 187661, at *18-19 (citation and quotation omitted).

Plaintiffs respectfully request that Wolf Popper be appointed as Lead Counsel. Wolf Popper is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its attached resume. *See* Waldman Decl., Ex. E. For example, in *Martinek v. AmTrust Financial Services, Inc.*, No. 19-cv-08030-KPF (S.D.N.Y.), the Court appointed Wolf Popper to serve as Lead Counsel on behalf of a class of investors in AmTrust Financial Services preferred stock. On November 16, 2022, the Court entered an order finally approving a $13 million cash settlement for the *Martinek* class. *Martinek*, ECF No. 111 (Final Judgement). The Court in that case stated that Wolf Popper "conducted the Litigation and achieved the Settlement with skill, perseverance and diligent advocacy; [and] Lead Counsel are highly experienced in class action litigation and securities class action litigation…." *Martinek*, 2022 U.S. Dist. LEXIS 209097, at *4 (S.D.N.Y. Nov. 16, 2022).

Another example is *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 2:09-cv-01713 (E.D.N.Y.). There, Wolf Popper represented the Public Employees' Retirement System of Mississippi

14

as Lead Plaintiff and recovered $280 million for investors in residential mortgage-backed securities issued by JPMorgan Acceptance Corp. On July 24, 2014, Hon. Pamela K. Chen of the Eastern District of New York entered an order approving the settlement. The Court found that "the representation of both sides was obviously very vigorous. The plaintiffs expended efforts in terms of pursuing the investigation, the theories, the research and the advocacy." *J.P. Morgan Acceptance Corp. I*, ECF No. 230 (Transcript) at 19:14-17. "Certainly in the beginning, at the time when some of the legal principles that are applied in this case, in any cases related to mortgage-backed securities, was not well established. They did yeomen's work in trying to establish some of those principles.... [T]his is a good result in this particular case." *Id*. at 22:5-18.

Additionally, proposed Delaware Counsel Cooch and Taylor has significant experience in complex and class action litigation, including matters concerning claimed violations of the federal securities laws. *See* Waldman Decl., Ex. F. As a result of their extensive experience in similar litigation, Plaintiffs' choices of counsel have the skill, knowledge, expertise, and experience to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving the selection of counsel by Plaintiffs, with Wolf Popper as Lead Counsel and Cooch and Taylor as Delaware Counsel, the members of the Class will receive high quality legal representation.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court issue an Order appointing them as Lead Plaintiffs and approving Wolf Popper as Lead Counsel and Cooch and Taylor as Delaware Counsel for the Class.

Dated: October 17, 2023

OF COUNSEL:

Carl L. Stine
Chet B. Waldman
Justyn J. Millamena
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
(212) 759-4600

COOCH & TAYLOR, P.A.

*/s/ Carmella P. Keener*
Carmella P. Keener (DE #2810)
The Brandywine Building
1000 N. West Street, Suite 1500
Wilmington, DE 19899
(302) 984-3816
ckeener@coochtaylor.com

*Counsel for Plaintiffs and the Proposed Class*